Our next case is No. 242205, Zentian Ltd. v. Apple Inc. Okay, Ms. Rhodes. May it please the Court, Catherine Rhodes for Zentian. I'd like to reserve three minutes for rebuttal. The Patent Trial and Appeal Board legally erred in its claim construction of Feature Vector. The Board deleted requirements in the claim itself and added concepts like code words that are found nowhere in the patent. Instead, the Board based its construction on Apple's prior art reference and expressly construed the claim to cover Apple's prior art embodiment. The result here is a prior art-driven construction that is inconsistent with the specification in the claims, but under a proper construction of Feature Vector, Apple's obviousness theory based on code words fails. So, turning to the Board's construction here, the Board deleted the requirement in Limitation 1B, the Wherein Clause, that says derived quantities are calculated from said digital audio stream. And it broadened it to cover derived quantities that are representative of the derived audio stream, but not calculated from that audio stream, such as a code word. And it did so after agreeing with Zentian's expert that a person of skill in the art would view the techniques of calculating Feature Vectors and code words as distinct, which is on Appendix Page 12, and went on to define the term Feature Vector broader than its plain and ordinary meaning. The real problem here, though, is that the inventors in the 377 patent did not act as their own lexicographers. There's no clear intent or express definition in the patent to redefine Feature Vector beyond its plain and ordinary meaning. And critically, the Board does not point to anything in the specification where its construction comes from, and Apple doesn't either. It doesn't really defend the Board's construction in its brief. Now, the patent here does not mention the concept of a code word anywhere or vector quantization. That comes from Apple's prior art reference, Jing, and here the Board conflated the claim construction analysis with the obviousness analysis in importing a structure from Jing into the definition of Feature Vector itself. But aren't the code words derived from Feature Vectors? They are not derived from Feature Vector in the meaning of the claim because code words are preset values that Jing says are derived or come from training data. So you have training data. The code words are generated. There are vector quantities there that are computed, and then those multidimensional vector quantities are reduced down to single-dimensional values that are stored in a codebook. It could be a series of numbers, 0 through 10, and that codebook with those single-dimensional values are then stored in memory, similar to a model or a dictionary. And what happens in Jing is a Feature Vector is calculated, and then the technique of vector quantization is used, which is essentially a lookup operation to say which code word entry in this pre-existing codebook is the Feature Vector most similar to, and it selects that code word from the pre-existing codebook and uses that for word identification, not the Feature Vector that was calculated from the digital audio stream, and that is the key aspect of the claim here that the Board deleted from its construction. And Apple doesn't dispute that. What is the claim referring to if it's not referring to code words when it's talking about derived quantities? Sure. So this is where I think the Board got tripped up is the meaning of derived quantities, but that meaning is clear from the specification. At column 12, lines 56 to 63, the specification provides context for what extracted and or derived quantities mean, and there the patent explains that in calculating a Feature Vector, you first take a slice of audio, a 10-millisecond slice of audio, and you extract or compute spectral components of that audio signal. Those are extracted quantities, and then you can take the derivatives of those quantities, and those are derived quantities. A Feature Vector, which is a point in an n-dimensional space, is the collection of those values. So it could be a collection of 39 extracted values, 39 derived values, or a combination of them both, but the Feature Vector themselves is the combination of those components, similar to a point on a 3D graph, where you have a point on a graph, that would be the Feature Vector, and then you have an X, Y, and Z coordinate. Your X, Y, and Z coordinates would be your extracted or derived quantities that together form the Feature Vector. And these things represent aspects of the audio, like pitch, frequency, or signal, that help the system understand what sound it's hearing, but in a numerical representation so these complex models can process it and figure out what was said. So I think here, the correct construction of Feature Vector here would be a point in the n-dimensional space, which comes from the patent at columns 13, lines 19 to 23, but that construction would go in Limitation 1A, where Feature Vector is introduced, because that's where the claim first says that a first programmable device is programmed to calculate a Feature Vector. And then Limitation 1B, the where-in clause, the meaning there is as clear as it is. You don't need the board's additions and deletions from the claim. Can you remind me, I'm sorry to interrupt, but can you remind me, where did this construction come from? Did it differ from the construction, did each side propose a construction, and did it differ from both of those? Neither side proposed a construction, Your Honor. The core dispute between the parties was whether Gene's code words meet Limitation 1G in the patent. Limitation 1G refers to Feature Vector, so the parties were disputing whether a code word is a Feature Vector. So I take your point that you started with, which is it kind of feels odd at some level to be imposing in the claim construction a word that's not in the claims. However, we've got lots of cases like O2 Micro, which in the context at least of infringement, expect that the construction will inform, if not answer, the question of infringement. So I kind of think the board was trying to be helpful here in terms of coming up with a construction that really spoke to the actual dispute between the parties, right? I think that's right, Your Honor. I think that's exactly what the board was trying to do. And we're not suggesting the board was wrong in thinking it needed to construe the claim, but when it did so, it deleted a critical language from the claim that says that the derived quantities are from said digital audio stream. And it treated extracted and derived quantities differently in terms of how they're created. The board's construction is consistent with the claim for extracted quantities in saying that those are from the digital audio stream, but it treated derived quantities as different. And I think what is really important is Apple in its own expert at Appendix 775, this is Apple's expert's declaration, he agrees that the meaning of that limitation referring to extracted and derived quantities, that a person of skill would have understood that that includes spectral components of the feature vector and their component derivatives, which is the portion of the… But what is the difference between the two? I thought what the board was pointing out was it says extracted and, or, or, yeah, and, or, so assume that they meant two different things. Yes, they are two different things. Extracted quantities would be if you're computing the spectral components from the audio signal, like pitch, frequency, sound, derivative components or derived quantities would be you taking the derivative, the first derivative or the second derivative or the third derivative, and you're further doing computations on the extracted quantities themselves. That is the difference between those two. And so they are both values computed from the audio stream, but they're different types of calculations and they represent the audio in slightly different ways, such that either or both of those can make up a feature vector. And I think the board, I think, misunderstood Zentian's arguments at the hearing where Zentian agrees that extracted and derived have different meanings in the claim. We do not dispute that, but they are things that are calculated from the audio. These numbers do not exist in the audio stream as it is. They are numerical representations that require… Extracting and derived means a particular kind of calculation. Well, it doesn't have to be. It's a calculation in the sense that a feature vector with the extracted and derived quantities, it's a numerical value with each of the different quantities. That doesn't just exist in the audio that you can just pluck out and see the value. There's different types of computations. We're not limiting the claims and don't suggest that the claims are limited to the type of computation you can do to get a feature vector. There are a variety of different ways to do that in ART, depending on how you want to configure your system. But the claim does require that those values are calculated from the digital audio stream, and it is undisputed in this case that the code words in Jing, and this is at Appendix 910, Jing says the code words are derived from training data, not the data that is input into the system that Apple is pointing to to map onto the claims. And so code words are not feature vectors in the meaning of the claim here, even if there might be a vector component of a code word in a general sense, based on how they were computed originally from the training data. The reason this matters here is that the board's finding that Jing teaches limitation 1G, which requires distances calculated from a first feature vector, was expressly based on its claim construction. Apple suggests that the board made an independent finding here, but the board was very clear that its finding for this limitation was based on its claim construction that included code words in that definition. And so if the panel reverses the board's claim construction, it must necessarily reverse the board's finding on that limitation as well. And that is because when you're calculating these distances from these preset code words, you're not calculating them from the first feature vector that is mentioned in the claim that comes from that audio signal. It's a wholly separate value that is created before audio ever enters the system. So under cases like bell communications that dealt with similar language derived from, something can't derive from audio if it is calculated before the audio ever exists. And so if the panel has no further questions, I'll reserve the remainder of my time. Okay, Mr. Lloyd. May it please the court. Seth Lloyd for Apple. The court correctly construed feature vector based on the claim's express recitation of extracted and or derived quantities. I think a lot of the discussion we heard this morning says that the board deleted what the quantities must be derived from, that the board excluded that it has to be derived from the audio signal. But the board's construction in explaining it expressly required quantities that are derived from the audio. So at the bottom of Appendix 11, the board says the claims can include extracted quantities, but also include quantities derived from the stream. The bottom of Appendix 12, again explaining its construction, a code word or representative feature vector comprises a plurality of derived or vector quantized quantities from said digital audio stream. The board consistently- What they're arguing is that the derivation here is from, I guess, feature vectors in training data rather than the actual stream that's being analyzed here. Yes, and what the board- Is that accurate? No, let me say it does not give the complete picture, Judge Dyke, and the board made a fact finding on that issue. And what the board found is it's derived from the training data and also from the audio frame. So that's the board's explanation at Appendix 27. And I think counsel's explanation just now largely explained what supports that finding. Counsel said derived from simply means calculated from the audio stream. And the way that the board understood, and the parties, I think, largely agree about- Before you go on, so where in 27 do they say it's derived in part from the training data and in part from the stream? Well, they say the second part, Judge Dyke. They say it's the- Where on page 27? Yes, the paragraph, the top paragraph, the very last sentence, additionally. The board says additionally, although code words may be determined in advance, they are still used in JANG to derive representative vector quantized versions of the computed feature vectors. And the board cites our expert at Appendix 788 to 90, and then also cites the JANG reference. So where does your expert say this? And so that's at 788. I think the better- 788? Yes, it's at 788. But he's building on his explanation that came earlier, Judge Dyke. And I think the best part of his declaration on this point is that- Let me make sure I give the right site. It's at Appendix 717. Let me see if that's the one I want. So it might take two steps, but the first step is at Appendix 717, paragraph 36, so the top half of that page. They're discussing the NADIS reference, which the other site also relies on. Our expert explained that NADIS teaches that the components of the feature vectors and prototype vectors- Prototype vectors in NADIS are code words. That's what the other site has said. That both the feature vectors and the prototype vectors correspond to well-known Kepstrel coefficients, linear predictive coding coefficients, or frequency band-related characteristics. So what that is saying is that both feature vectors and code words have the same components. They're both multi-component quantities, and the components are audio frequency components. It's not exactly clear as to whether it comes from the training data or not. I agree, Judge Dyke. So then the next part is to go to NADIS itself, which is what he's citing there, and that's at Appendix 2000. Okay. It's in column one of Appendix 2000, the paragraph that starts about line 44. So over on the left. And again, when NADIS says prototype vectors, the other site has characterized that as code words. And what NADIS says is that in associating prototype vectors with feature vectors, the feature vector for each time interval is typically compared to each prototype vector based on a predetermined closeless measure. The distance between feature vector and each prototype vector is determined, and the closest prototype vector is selected. So what that's explaining is, I think, largely what you just heard from my friend on the other side, which is the way, yes, the code book of all the possible code words is determined in advance. But now when you have each audio frame, you have to make a determination. You have to make a calculation about which of those code words is the best approximation for that audio frame. And so you do a closeness measure. You make calculations using the input audio frame and the code book. And you find what is the best approximation for that specific audio frame. That's what the board found at Appendix 27. That's what our expert explained. And that's, in fact, the way, as you heard from opposing counsel, that's the way it works in the art. And so the other side's argument is really based on this false notion that the code words can only be derived based on training data. But, in fact, the code words are derived from training data and then from the given audio frame. Because you're saying the latter is true because they're selected based on the stream. They're calculated based on the audio stream. So there's a calculation. A closeness determination is what Nautus explains. It's a calculation that's made using the audio stream and the prototype vector, going through it and basically calculating for each one which of these is the best approximation for this specific audio frame. That's what the board understood as kind of the ordinary meaning of derived, which we heard. It's not any specific type of calculation. It's just a calculation made with the input audio frame. And I think just to take a step back, what we're talking about is the board's fact finding. The board made fact findings about this at appendix 12 in the context of claim construction and then at appendix 27 in the context of analyzing the prior art. The other side, the opening brief does not challenge the board's fact finding at all. And so this is an unchallenged finding from the board. And at the least, for the reasons we've talked about, the record amply supports that finding. And this also, I think, goes to some of the other questions that the court had the discussion about. Was this claim construction? Was this fact finding? I think the board understood. The board articulated early in its decision that there was a dispute about whether code words are feature vectors. And as is often the case, you can sort of conceptualize that as a dispute about the scope of the claim or a dispute about the finding of fact. The board said we'll treat that as an implicit claim construction issue, analyze claim construction. But then even in the context of claim construction, it made findings. Appendix 12, the board expressly found as fact that a person of skill in the art, citing our expert and crediting our expert, that a person of skill in the art would have understood that code words have multiple quantities. So this notion that it's a single quantity, the board disagreed with that on the facts and then found that those multiple quantities, a person of skill in the art, bottom of appendix 12, would have understood those multiple quantities are derived from the audio stream. That's the discussion we've been having. The record supports that finding. Even in the context of claim construction, the board can make findings of fact as it did here. And the other side would need to show a lack of substantial evidence, which they cannot show. I think that alone is enough to dispose of this appeal. We did raise alternative grounds. I think the other side touched on those briefly. We're, of course, happy to address those if the court has any questions. But if not, we ask that you affirm. Okay, thank you. Ms. Rhodes, you have three minutes. Starting with the derived from language that counsel kept referring to and the board, that code words are derived from feature vectors because they may be selected from the code book based on feature vectors in Jing that are calculated. The claim language, though, says calculated from the audio stream, not derived from, calculated from. And so that is a mathematical computation from the audio stream. And what the board did, focusing on the construction first, is broaden that to say representative of derived quantities, which has no – I didn't hear counsel point to anything in the specification defending the board's actual construction here. This is what they're suggesting, if I understand correctly, is that there's a calculation step because the selection of the particular code word involves calculation. That's the vector quantization piece. But Jing makes clear that the audio streams that are used to calculate feature vectors for speech recognition and code words for the code book are two different audio streams, which is the key issue here with the board's construction. And this is in Jing at Appendix 907. It starts at column 6, around line 46, where Jing starts talking about speech is input into the system in the form of an audio voice signal. And it talks about how the system, then, is configured to have a feature extraction module that then can extract feature vectors. We do not dispute that Jing does teach feature vectors. The problem here is Apple does not point to Jing's actual feature vectors for its mapping of the limitations requiring distances to be calculated because it relies on the code word embodiment of Jing instead. And on the next page, Appendix page 908, at the top of column 7, refers to code words using vector quantization techniques in a code book. This is line 4 to 5. Code words using vector quantization techniques in a code book derived from training data. Jing talks about how to train the system in column 11, around line 25, and talks about that's a totally different audio stream than what Jing is actually using and what Apple is pointing to for the capabilities of the claim to calculate feature vectors and distances in the claim. It's just a wholly different technique. And the Board agreed with Zhentian's expert in Appendix 12 that calculating distances from feature vectors and calculating probabilities from code words are distinct and a person of skill would understand that. And the only reason it got to where it did is because it brought in that definition. So for those reasons, we ask that the Court reverse the Board's claim construction. Okay, thank you. Thank both counsel. The case is submitted.